IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>Michael R. Kramer,<br><br>　　　　　　Defendant.<br>_____ | Case Nos.　3:13-mj-0004-CMK<br>　　　　　　　3:14-mj-0063-CMK<br><br>PROPOSED MEMORANDUM OF<br>OPINION AND JUDGMENT |

These cases came on regularly for trial on April 23, 2015, at the United States District Court in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge, presiding; the United States appeared by and through Robyn Pullio and Elliot Wong, Assistant United States Attorneys; and the defendant, Michael R. Kramer, appeared, in propria persona, and John Kucera was present and appeared as standby counsel, for the defendant.[1]

---

[1] At the time of defendant's initial appearance on December 12, 2014, the court appointed attorney John Kucera to represent him through the course of the proceedings. Defendant's arraignment was continued to January 27, 2015. During both of these proceedings defendant insisted on his right to represent himself at time of trial. The court denied these requests without prejudice. Trial was set for April 23, 2015 with a trial confirmation and status hearing set for March 24, 2015. At the March 24th hearing, defendant renewed his motion to represent himself at time of trial. Following discussion and admonishment, defendant's motion was granted and John Kucera remained in case as standby counsel.

In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court concluded that implicit with the Sixth Amendment's right to counsel is a right to self-representation and that a defendant could not be compelled to accept assistance of counsel. 422 U.S. at 819, 833–34. The Supreme Court also concluded that, to invoke the self-representation right, a defendant must "knowingly and intelligently" waive his right to counsel. Id. at 835. The Supreme Court's Faretta ruling recognized, however, that a defendant's self-representation right is not absolute. See Martinez v. Court of Appeal, 528 U.S. 152 (2000). The court also has the ability to terminate self-representation or appoint standby counsel, even over the defendant's objection. Id. at 834 n. 46.

1

1.  <u>The Gun Incident</u>.

On February 10, 2013, defendant was issued violation no. 3503803 for carrying a concealed weapon at Whiskeytown National Recreation Area [Whiskeytown].  This violation notice was superceded by a complaint filed on May 12, 2013, charging the defendant in count 1 with possession of a concealed handgun in violation of and 36 C.F.R. § 2.4(a)(1)(I)[2];  count 2,

---

[2] **36 C.F.R. § 2.4**

§ 2.4 Weapons, traps and nets.

(a)(1) Except as otherwise provided in this section and parts 7 (special regulations) and 13 (Alaska regulations), the following are prohibited:

(i) Possessing a weapon, trap or net
(ii) Carrying a weapon, trap or net
(iii) Using a weapon, trap or net

(2) Weapons, traps or nets may be carried, possessed or used:

(i) At designated times and locations in park areas where:
(A) The taking of wildlife is authorized by law in accordance with § 2.2 of this chapter;
(B) The taking of fish is authorized by law in accordance with § 2.3 of this part.
(ii) When used for target practice at designated times and at facilities or locations designed and constructed specifically for this purpose and designated pursuant to special regulations.
(iii) Within a residential dwelling. For purposes of this subparagraph only, the term "residential dwelling" means a fixed housing structure which is either the principal residence of its occupants, or is occupied on a regular and recurring basis by its occupants as an alternate residence or vacation home.
(3) Traps, nets and unloaded weapons may be possessed within a temporary lodging or mechanical mode of conveyance when such implements are rendered temporarily inoperable or are packed, cased or stored in a manner that will prevent their ready use.
(b) Carrying or possessing a loaded weapon in a motor vehicle, vessel or other mode of transportation is prohibited, except that carrying or possessing a loaded weapon in a vessel is allowed when such vessel is not being propelled by machinery and is used as a shooting platform in accordance with Federal and State law.
(c) The use of a weapon, trap or net in a manner that endangers persons or property is prohibited.
(d) The superintendent may issue a permit to carry or possess a weapon, trap or net under the following circumstances:
(1) When necessary to support research activities conducted in accordance with § 2.5.
(2) To carry firearms for persons in charge of pack trains or saddle horses for emergency use.
(3) For employees, agents or cooperating officials in the performance of their official duties.
(4) To provide access to otherwise inaccessible lands or waters contiguous to a park area when other means of access are otherwise impracticable or impossible.
Violation of the terms and conditions of a permit issued pursuant to this paragraph is prohibited and may result in the suspension or revocation of the permit.
(e) Authorized Federal, State and local law enforcement officers may carry firearms in the performance of their official duties.
(f) The carrying or possessing of a weapon, trap or net in violation of applicable Federal and State laws is prohibited.
(g) The regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States.
(h) Notwithstanding any other provision in this Chapter, a person may possess, carry, and transport concealed, loaded, and operable firearms within a national park area in accordance with the laws of the state in which the national park area, or that portion thereof, is located, except as otherwise prohibited by applicable Federal law.

having an expired vehicle registration in violation of 36 C.F.R. § 4.2, incorporating California Vehicle Code § 4000(a)[3];  count 3, having no proof of financial responsibility for his vehicle in

---

[3] **36 C.F.R. § 4.2**
§ 4.2 State law applicable.
(a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.
(b) Violating a provision of State law is prohibited.

**Cal.Vehicle Code § 4000**
§ 4000. Registration required.

(a)(1) A person shall not drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code or registered under the permanent trailer identification program, except that an off-highway motor vehicle which displays an identification plate or device issued by the department pursuant to Section 38010 may be driven, moved, or left standing in an offstreet public parking facility without being registered or paying registration fees.

(2) For purposes of this subdivision, "offstreet public parking facility" means either of the following:
(A) Any publicly owned parking facility.
(B) Any privately owned parking facility for which no fee for the privilege to park is charged and which is held open for the common public use of retail customers.

(3) This subdivision does not apply to any motor vehicle stored in a privately owned offstreet parking facility by, or with the express permission of, the owner of the privately owned offstreet parking facility.

(4) Beginning July 1, 2011, the enforcement of paragraph (1) shall commence on the first day of the second month following the month of expiration of the vehicle's registration. This paragraph shall become inoperative on January 1, 2012.

(b) No person shall drive, move, or leave standing upon a highway any motor vehicle, as defined in Chapter 2 (commencing with Section 39010) of Part 1 of Division 26 of the Health and Safety Code, that has been registered in violation of Part 5 (commencing with Section 43000) of Division 26 of the Health and Safety Code.

(c) Subdivisions (a) and (b) do not apply to off-highway motor vehicles operated pursuant to Sections 38025 and 38026.5.

(d) This section does not apply, following payment of fees due for registration, during the time that registration and transfer is being withheld by the department pending the investigation of any use tax due under the Revenue and Taxation Code.

(e) Subdivision (a) does not apply to a vehicle that is towed by a tow truck on the order of a sheriff, marshal, or other official acting pursuant to a court order or on the order of a peace officer acting pursuant to this code.

(f) Subdivision (a) applies to a vehicle that is towed from a highway or offstreet parking facility under the direction of a highway service organization when that organization is providing emergency roadside assistance to that vehicle. However, the operator of a tow truck providing that assistance to that vehicle is not responsible for the violation of subdivision (a) with respect to that vehicle. The owner of an unregistered vehicle that is disabled and located on private property, shall obtain a permit from the department pursuant to Section 4003 prior to having the vehicle towed on the highway.

(g)(1) Pursuant to Section 4022 and to subparagraph (B) of paragraph (3) of subdivision (o) of Section 22651, a vehicle obtained by a licensed repossessor as a release of collateral is exempt from registration pursuant to this section for purposes of the repossessor removing the vehicle to his or her storage facility or the facility of the legal owner. A law enforcement agency, impounding authority, tow yard, storage facility, or any other person in possession of the collateral shall release the vehicle without requiring current registration and pursuant to subdivision (f) of Section 14602.6.
(2) The legal owner of collateral shall, by operation of law and without requiring further action, indemnify and hold harmless a law enforcement agency, city, county, city and county, the state, a tow yard, storage facility, or an impounding yard from a claim arising out of the release of the collateral to a licensee, and from any damage to the collateral after its release, including reasonable attorney's fees and costs associated with defending a claim, if the collateral was released in compliance with this subdivision.

(h) For purposes of this section, possession of a California driver's license by the registered owner of a vehicle shall give rise to a rebuttable presumption that the owner is a resident of California.

3

violation of 36 C.F.R. § 4.2, incorporating California Vehicle Code 16028(A)[4] and count 4,

---

[4] **Cal.Vehicle Code § 16028**

§ 16028. Proof of financial responsibility.

(a) Upon the demand of a peace officer pursuant to subdivision (b) or upon the demand of a peace officer or traffic collision investigator pursuant to subdivision (c), every person who drives a motor vehicle upon a highway shall provide evidence of financial responsibility for the vehicle that is in effect at the time the demand is made. The evidence of financial responsibility may be provided using a mobile electronic device. However, a peace officer shall not stop a vehicle for the sole purpose of determining whether the vehicle is being driven in violation of this subdivision.

(b) If a notice to appear is issued for any alleged violation of this code, except a violation specified in Chapter 9 (commencing with Section 22500) of Division 11 or any local ordinance adopted pursuant to that chapter, the cited driver shall furnish written evidence of financial responsibility or may provide electronic verification of evidence of financial responsibility using a mobile electronic device upon request of the peace officer issuing the citation. The peace officer shall request and write the driver's evidence of financial responsibility on the notice to appear, except when the peace officer is unable to write the driver's evidence of financial responsibility on the notice to appear due to an emergency that requires his or her presence elsewhere. If the cited driver fails to provide evidence of financial responsibility at the time the notice to appear is issued, the peace officer may issue the driver a notice to appear for violation of subdivision (a). The notice to appear for violation of subdivision (a) shall be written on the same citation form as the original violation.

(c) If a peace officer, or a regularly employed and salaried employee of a city or county who has been trained as a traffic collision investigator, is summoned to the scene of an accident described in Section 16000, the driver of a motor vehicle that is in any manner involved in the accident shall furnish written evidence of financial responsibility or may provide electronic verification of evidence of financial responsibility using a mobile electronic device upon the request of the peace officer or traffic collision investigator. If the driver fails to provide evidence of financial responsibility when requested, the peace officer may issue the driver a notice to appear for violation of this subdivision. A traffic collision investigator may cause a notice to appear to be issued for a violation of this subdivision, upon review of that citation by a peace officer.

(d)(1) If, at the time a notice to appear for a violation of subdivision (a) is issued, the person is driving a motor vehicle owned or leased by the driver's employer, and the vehicle is being driven with the permission of the employer, this section shall apply to the employer rather than the driver. In that case, a notice to appear shall be issued to the employer rather than the driver, and the driver may sign the notice on behalf of the employer.

(2) The driver shall notify the employer of the receipt of the notice issued pursuant to paragraph (1) not later than five days after receipt.

(e) A person issued a notice to appear for a violation of subdivision (a) may personally appear before the clerk of the court, as designated in the notice to appear, and provide written evidence of financial responsibility in a form consistent with Section 16020, showing that the driver was in compliance with that section at the time the notice to appear for violating subdivision (a) was issued. In lieu of the personal appearance, the person may submit by mail to the court written evidence of having had financial responsibility at the time the notice to appear was issued. Upon receipt by the clerk of that written evidence of financial responsibility in a form consistent with Section 16020, further proceedings on the notice to appear for the violation of subdivision (a) shall be dismissed.

(f) For the purposes of this section, "mobile electronic device" means a portable computing and communication device that has a display screen with touch input or a miniature keyboard.

(g) For the purposes of this section, when a person provides evidence of financial responsibility using a mobile electronic device to a peace officer, the peace officer shall only view the evidence of financial responsibility and is prohibited from viewing any other content on the mobile electronic device.

(h) If a person presents a mobile electronic device pursuant to this section, that person assumes all liability for any damage to the mobile electronic device.

failing to obtain a camping permit in violation of 36 C.F.R. § 2.10(b)(8)[5], all Class B misdemeanors.  This complaint was superceded by way of Information filed January 17, 2015, which incorporated the same charges set forth in the complaint.

    2.  <u>The Chase Incident</u>.

By way of a complaint filed on December 16, 2014, the defendant was charged with numerous violations pertaining to a vehicle chase commencing in Whiskeytown on December 5, 2014, and ending with the defendant's arrest within the Redding city limits.  This complaint was

---

[5] **36 C.F.R. § 2.10**

§ 2.10 Camping and food storage.

(a) The superintendent may require permits, designate sites or areas, and establish conditions for camping.

(b) The following are prohibited:

(1) Digging or leveling the ground at a campsite.

(2) Leaving camping equipment, site alterations, or refuse after departing from the campsite.

(3) Camping within 25 feet of a water hydrant or main road, or within 100 feet of a flowing stream, river or body of water, except as designated.

(4) Creating or sustaining unreasonable noise between the hours of 10:00 p.m. and 6:00 a.m., considering the nature and purpose of the actor's conduct, impact on park users, location, and other factors which would govern the conduct of a reasonably prudent person under the circumstances.

(5) The installation of permanent camping facilities.

(6) Displaying wildlife carcasses or other remains or parts thereof, except when taken pursuant to § 2.2.

(7) Connecting to a utility system, except as designated.

(8) Failing to obtain a permit, where required.

(9) Violating conditions which may be established by the superintendent.

(10) Camping outside of designated sites or areas.

(c) Violation of the terms and conditions of a permit issued in accordance with this section is prohibited and may result in the suspension or revocation of the permit.

(d) Food storage. The superintendent may designate all or a portion of a park area where food, lawfully taken fish or wildlife, garbage, and equipment used to cook or store food must be kept sealed in a vehicle, or in a camping unit that is constructed of solid, non-pliable material, or suspended at least 10 feet above the ground and 4 feet horizontally from a post, tree trunk, or other object, or shall be stored as otherwise designated. Violation of this restriction is prohibited. This restriction does not apply to food that is being transported, consumed, or prepared for consumption.

superceded by way of an Information filed on January 27, 2015. In count 1, the defendant is charged with violating 18 U.S.C. § 13, incorporating California Vehicle Code § 14601.1(a)[6], driving with a suspended license; count 2 with violating 18 U.S.C. § 13, incorporating California Vehicle Code § 12500(a)[7], driving without a valid license; count 3 with violating 36 C.F.R. §

---

[6] **Cal. Vehicle Code § 14601.1**

§ 14601.1. Driving when privilege revoked or suspended for other reasons

(a) No person shall drive a motor vehicle when his or her driving privilege is suspended or revoked for any reason other than those listed in Section 14601, 14601.2, or 14601.5, if the person so driving has knowledge of the suspension or revocation. Knowledge shall be conclusively presumed if mailed notice has been given by the department to the person pursuant to Section 13106. The presumption established by this subdivision is a presumption affecting the burden of proof.

(b) Any person convicted under this section shall be punished as follows:

(1) Upon a first conviction, by imprisonment in the county jail for not more than six months or by a fine of not less than three hundred dollars ($300) or more than one thousand dollars ($1,000), or by both that fine and imprisonment.

(2) If the offense occurred within five years of a prior offense which resulted in a conviction of a violation of this section or Section 14601, 14601.2, or 14601.5, by imprisonment in the county jail for not less than five days or more than one year and by a fine of not less than five hundred dollars ($500) or more than two thousand dollars ($2,000).

(c) Nothing in this section prohibits a person from driving a motor vehicle, which is owned or utilized by the person's employer, during the course of employment on private property which is owned or utilized by the employer, except an offstreet parking facility as defined in subdivision (d) of Section 12500.

(d) When the prosecution agrees to a plea of guilty or nolo contendere to a charge of a violation of this section in satisfaction of, or as a substitute for, an original charge of a violation of Section 14601.2, and the court accepts that plea, except, in the interest of justice, when the court finds it would be inappropriate, the court shall, pursuant to Section 23575, require the person convicted, in addition to any other requirements, to install a certified ignition interlock device on any vehicle that the person owns or operates for a period not to exceed three years.

(e) This section also applies to the operation of an off-highway motor vehicle on those lands to which the Chappie-Z'berg Off-Highway Motor Vehicle Law of 1971 (Division 16.5 (commencing with Section 38000)) applies as to off-highway motor vehicles, as described in Section 38001.

[7] **Cal. Vehicle Code § 12500**

§ 12500. License requirements.

(a) A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code.

(b) A person may not drive a motorcycle, motor-driven cycle, or motorized bicycle upon a highway, unless the person then holds a valid driver's license or endorsement issued under this code for that class, except those persons who are expressly exempted under this code, or those persons specifically authorized to operate motorized bicycles or motorized scooters with a valid driver's license of any class, as specified in subdivision (h) of Section 12804.9.

(c) A person may not drive a motor vehicle in or upon any offstreet parking facility, unless the person then holds a valid driver's license of the appropriate class or certification to operate the vehicle. As used in this subdivision, "offstreet parking facility"

6

4.22(b)(3)[8], unsafe operation of a vehicle;  count 4 with violating 36 C.F.R. § 2.32(a)(1)[9],

---

means any offstreet facility held open for use by the public for parking vehicles and includes any publicly owned facilities for offstreet parking, and privately owned facilities for offstreet parking where no fee is charged for the privilege to park and which are held open for the common public use of retail customers.

(d) A person may not drive a motor vehicle or combination of vehicles that is not of a type for which the person is licensed.

(e) A motorized scooter operated on public streets shall at all times be equipped with an engine that complies with the applicable State Air Resources Board emission requirements.

---

[8] **36 C.F.R. § 4.22**

(a) The elements of this section constitute offenses that are less serious than reckless driving. The offense of reckless driving is defined by State law and violations are prosecuted pursuant to the provisions of section 4.2 of this chapter.

(b) The following are prohibited:

(1) Operating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character.

(2) Operating a motor vehicle in a manner which unnecessarily causes its tires to squeal, skid or break free of the road surface.

(3) Failing to maintain that degree of control of a motor vehicle necessary to avoid danger to persons, property or wildlife.

(4) Operating a motor vehicle while allowing a person to ride:

(i) On or within any vehicle, trailer or other mode of conveyance towed behind the motor vehicle unless specifically designed for carrying passengers while being towed; or

(ii) On any exterior portion of the motor vehicle not designed or intended for the use of a passenger. This restriction does not apply to a person seated on the floor of a truck bed equipped with sides, unless prohibited by State law.

[9] **36 C.F.R. § 2.32**

§ 2.32 Interfering with agency functions.

(a) The following are prohibited:

(1) Interference. Threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty.

(2) Lawful order. Violating the lawful order of a government employee or agent authorized to maintain order and control public access and movement during fire fighting operations, search and rescue operations, wildlife management operations involving animals that pose a threat to public safety, law enforcement actions, and emergency operations that involve a threat to public safety or park resources, or other activities where the control of public movement and activities is necessary to maintain order and public safety.

(3) False information. Knowingly giving a false or fictitious report or other false information: (i) To an authorized person investigating an accident or violation of law or regulation or; (ii) on an application for a permit.

(4) False Report. Knowingly giving a false report for the purpose of misleading a government employee or agent in the conduct

threatening, resisting . . . interfering with a government employee engaged in official duty; count 5 with violating 36 C.F.R. § 2.32(a)(2), failure to obey lawful order of a Government employee; count 6 with violating 36 C.F.R. § 2.34(a)(1)[10], disorderly conduct; count 7 in violating 18 U.S.C. § 13, incorporating California Vehicle Code § 4000(a)(1), having an expired vehicle registration; count 8 with violating 18 U.S.C. § 13, incorporating California Vehicle Code § 16028(a), failure to provide proof of financial responsibility for his vehicle; and count 9 with violating 18 U.S.C. § 13, incorporating California Vehicle Code § 5402(a)[11], failure to display

---

of official duties, or making a false report that causes a response by the United States to a fictitious event.

(b) The regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States.

[10]  **36 C.F.R. § 2.34**

§ 2.34 Disorderly conduct.

(a) A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:

(1) Engages in fighting or threatening, or in violent behavior.

(2) Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

(3) Makes noise that is unreasonable, considering the nature and purpose of the actor's conduct, location, time of day or night, and other factors that would govern the conduct of a reasonably prudent person under the circumstances.

(4) Creates or maintains a hazardous or physically offensive condition.

(b) The regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States.

[11]  **Cal.Vehicle Code § 5204**

§ 5204. Tabs

(a) Except as provided by subdivisions (b) and (c), a tab shall indicate the year of expiration and a tab shall indicate the month of expiration. Current month and year tabs shall be attached to the rear license plate assigned to the vehicle for the last preceding registration year in which license plates were issued, and, when so attached, the license plate with the tabs shall, for the purposes of this code, be deemed to be the license plate, except that truck tractors, and commercial motor vehicles having a declared gross vehicle weight of 10,001 pounds or more, shall display the current month and year tabs upon the front license plate assigned to the truck tractor or commercial motor vehicle. Vehicles that fail to display current month and year tabs or display expired tabs are in violation of this section.

current registration tabs. Each of these offenses is punishable by a fine of not more than $ 5,000, imprisonment for not more than six months, or both.

## I.  THE TRIAL

The Gun Incident occurred on February 10, 2013. Whiskeytown Ranger Steven Culver [Culver] observed the defendant's Dodge pickup parked at a campsite within the interior boundaries of Whiskeytown National Recreational Area [Whiskeytown] within the Eastern District of California. Items of camping equipment were observed in the pickup, and when questioned by Culver, the defendant admitted that he had camped the previous evening without a required Whiskeytown camping permit. Culver also detected an odor of marijuana emanating from the pickup. Culver attempted to ascertain the identity of the defendant, but the defendant could only produce a copy of "Certificate of Live Birth." Finding this unsatisfactory, the defendant gave Culver permission to search the pickup for purposes of locating a more reliable form of identification. During this search, Culver discovered a loaded Springfield 40 caliber handgun and considerable shooting paraphernalia. The defendant did not possess a valid California concealed weapon permit. Culver also determined that the defendant's driving privileges had been suspended. The defendant was also unable to provide proof of current insurance on the pickup or a current registration.

The Chase Incident occurred on December 5, 2014. Defendant was observed traveling eastbound on Highway 299 within Whiskeytown in the same unregistered Dodge pickup.

---

(b) The requirement of subdivision (a) that the tabs indicate the year and the month of expiration does not apply to fleet vehicles subject to Article 9.5 (commencing with Section 5300) or vehicles defined in Section 468.

(c) Subdivision (a) does not apply when proper application for registration has been made pursuant to Section 4602 and the new indicia of current registration have not been received from the department.

(d) This section is enforceable against any motor vehicle that is driven, moved, or left standing upon a highway, or in an offstreet public parking facility, in the same manner as provided in subdivision (a) of Section 4000.

Rangers Nicholas Henke [Henke] and Scott Nash [Nash] were patrolling in a marked Whiskeytown law enforcement vehicle and attempted to pull the defendant over without success. Despite activating the emergency lights and siren, the defendant continued to drive eastbound on State Highway 299 toward the city of Redding passing through the eastern boundary of Whiskeytown. Henke and Nash continued to pursue defendant's vehicle for the next six miles until he was required to come to a stop at a traffic signal at the intersection of Eureka Way and Buenaventura Boulevard located on the western outskirts of Redding. Henke exited his vehicle with pistol raised and ordered the defendant to stop. The defendant ignored these orders and continued driving eastward on Eureka Way until turning left on Overhill Drive. Henke and Nash continued to pursue the defendant's vehicle until it came to a stop on the lawn of a private residence. The defendant immediately exited his vehicle and approached Henke and Nash's marked vehicle in a markedly rapid pace.  Nash testified that the defendant ripped off his shirt, approached him in an aggressive manner with raised arms and clenched fists while yelling unintelligibly. Ultimately, Nash and Henke found it necessary to tase the defendant until he became incapacitated. The defendant contends that he was aware that he was being pursued by Henke and Nash from Whiskeytown, but claims his confrontation and demeanor with them was nonaggressive and done for the sole purpose of ascertaining the reason for the chase and stop.

As with the Gun Incident, it was also determined that the defendant continued to drive while having his driving privileges suspended coupled with having no valid vehicle registration or proof of insurance. Nash also observed that the date sticker on the defendant's vehicle license plate appeared to be altered in a fashion to appear current. The defendant admitted to this alternation. The defendant was arrested and taken into custody.

At trial, the defendant testified that his refusal to pull over was primarily predicated on his fear that his vehicle would be impounded. On cross examination he did not dispute or challenge any of the sixteen charges set forth in the charging documents, but rather admitted to virtually all of the elements required for each of the offenses.

1    The defendant appears to generally challenge the authority of the United States
2 government to exert any type of control over him and argues that his contact with Whiskeytown's
3 law enforcement officers on February 10, 2013 and December 5, 2014 were without his consent.
4 Some of his other arguments, however, are much more oblique.

5    As to the vehicle code violations, he contends that his pickup is a "conveyance," rather
6 than a vehicle. In referring to the law enforcement officers and members of the court family as
7 "public servants" he appears to suggest that the proceedings against him are void and a sham.
8 Similarly, he argues that both incidents and the subsequent court proceedings are "not within the
9 four corners of contract law." He contends that by "autographing" his violation notice, rather
10 than signing it, he did not consent or sanction the current proceedings.

11    The defendant was afforded the opportunity to brief his arguments and positions within
12 30 days following the completion of trial. This deadline past due to defendant's arrest on
13 unrelated state charges. During a hearing in this court to revoke defendant's pretrial release from
14 federal custody, he renewed his request to file his post-trial brief on or before June 12th. On June
15 12th, the defendant submitted a letter to the court which reads as follows:

> Good afternoon Magistrate Craig Kellison,
>
> I am created by GOD. I am co-heir with Christ; as it is written. I am not great; HE who is with me is great. I,michael, am on the quest for a non "p" type passport. Meanwhile,I shall procure documents known as "current class C license, registration and proof of financial responsibility", to prevent any future incidents. I shall "pullover when safe" if some wish to examine said documents. I,michael, simply ask for forgiveness in all these matters Re: 3:13-mj-00004-CMK and 3:14-mj-00063-CMK.

Since the defendant's post trial brief or letter addresses none of his claims made during trial, the court will receive and consider it as part of defendant's statement of mitigation or allocution. See, Crim. Rules 32(i)(4)(ii) and 58(c)(3).

//////////

//////////

## II.  DISCUSSION

The court is left with few factual issues to resolve.  The government presented sufficient evidence to establish the elements of virtually all of the sixteen charged offenses.  If the court did find certain proof wanting, the defendant cured these deficiencies during cross examination by the government.  If he intended to provide legal authority to negate or ameliorate said charges, he failed or declined to do so.

    1.  Vehicle Code violations:

Counts 2 and 3 of the Gun Incident; and counts 1, 2, 7, 8 and 9 of the Chase Incident all pertain to California vehicle code violations assimilated under federal law[12].  In both the Gun and

---

[12] **18 U.S.C.A. § 13**

§ 13. Laws of States adopted for areas within Federal jurisdiction

(a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(b)(1) Subject to paragraph (2) and for purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State, territory, possession, or district, for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law. Any limitation on the right or privilege to operate a motor vehicle imposed under this subsection shall apply only to the special maritime and territorial jurisdiction of the United States.

(2)(A) In addition to any term of imprisonment provided for operating a motor vehicle under the influence of a drug or alcohol imposed under the law of a State, territory, possession, or district, the punishment for such an offense under this section shall include an additional term of imprisonment of not more than 1 year, or if serious bodily injury of a minor is caused, not more than 5 years, or if death of a minor is caused, not more than 10 years, and an additional fine under this title, or both, if--

(i) a minor (other than the offender) was present in the motor vehicle when the offense was committed; and

(ii) the law of the State, territory, possession, or district in which the offense occurred does not provide an additional term of imprisonment under the circumstances described in clause (i).

(B) For the purposes of subparagraph (A), the term "minor" means a person less than 18 years of age.

(c) Whenever any waters of the territorial sea of the United States lie outside the territory of any State, Commonwealth, territory,

1  Chase Incidents, defendant was found to be unlicensed, driving while uninsured and in
2  possession of a vehicle having an expired registration.  Gov. Ex. 2 and 10.   In count 9 of the
3  Chase Incident, defendant is charged with possessing a license plate which did not have the
4  required year and month stickers attached.  The evidence adduced at trial revealed that the
5  defendant had intentionally altered the month and year stickers to give the impression that the
6  vehicle was legally registered.
7      The court finds the defendant guilty of the vehicle code violations assimilated under 18
8  U.S.C § 13 in counts 2 and 3 of the Gun Incident and counts 1, 2, 7, 8 and 9 of the Chase
9  Incident.
10     The charges in counts 4, 5 and 6 of the Chase Incident relate to defendant's demeanor and
11 flight resulting in his arrest at the end of the car chase within the city of Redding.  Several times
12 during this incident the defendant refused to obey lawful orders and interfered with the
13 performance of the Whiskeytown officers engaged in their official duties.  He also exhibited
14 aggressive behavior towards both officers just prior to his arrest. The court finds the defendant
15 guilty of the charges in counts 4, 5 and 6 of the Chase Incident.
16     In count 3 of the Chase Incident the defendant is charged with unsafe operation of his
17 vehicle during the chase as he traveled between Whiskeytown and Redding.  The evidence was
18 insufficient to make such a finding and the court finds the defendant not guilty of count 3.
19     Finally, in counts 1 and 4 of the Gun Incident the evidence supported the conclusion that
20 defendant was found camping without the required camping permit while possessing a loaded
21 Springfield 40 caliber  handgun and considerable shooting paraphernalia.  The defendant did not
22 possess a valid California concealed weapon permit.  The court finds the defendant guilty of the

---

possession, or district, such waters (including the airspace above and the seabed and subsoil below, and artificial islands and fixed structures erected thereon) shall be deemed, for purposes of subsection (a), to lie within the area of the State, Commonwealth, territory, possession, or district that it would lie within if the boundaries of such State, Commonwealth, territory, possession, or district were extended seaward to the outer limit of the territorial sea of the United States.

charges in counts 1 and 4 of the Gun incident.

## IV.  CONCLUSION

(1) The evidence supports beyond a reasonable doubt that with respect to Information filed January 17, 2015, the defendant is guilty of the charges set forth in: count 1, possession of a concealed handgun in violation of  36 C.F.R. § 2.4(a)(1)(I);  count 2, possession or control of an unregistered vehicle in violation of 36 C.F.R. § 4.2, incorporating California Vehicle Code § 4000(a);  count 3, having no proof of financial responsibility for his vehicle in violation of  36 C.F.R. § 4.2, incorporating California Vehicle Code 16028(A), and count 4, failing to obtain a camping permit in violation of 36 C.F.R. § 2.10(b)(8), all Class B misdemeanors.

(2) The evidence also supports beyond a reasonable doubt that with respect to Information filed January 27, 2015, the defendant is guilty of the charges set forth in:  count 1, violating 18 U.S.C. § 13, incorporating  California Vehicle Code § 14601.1(a), driving with a suspended license;  count 2 with violating 18 U.S.C. § 13, incorporating California Vehicle Code § 12500(a), driving without a valid driving license; count 3 violating 36 C.F.R. § 4.22(b)(3), unsafe operation of a vehicle;  count 4  violating 36 C.F.R. § 2.32(a)(1), threatening, resisting . . . interfering with a government employee engaged in official duty;  count 5,  violating  36 C.F.R. § 2.32(a)(2), failure to obey lawful order of a Government employee; count 7, violating 18 U.S.C. § 13, incorporating California Vehicle Code § 4000(a)(1), possessing or in control of an unregistered vehicle;  count 8, violating 18 U.S.C. § 13 incorporating California Vehicle Code § 16028(a), failure to provide proof of financial responsibility for his vehicle;  count 9 violating 18 U.S.C. § 13, incorporating California Vehicle Code § 5402(a), failure to display current registration stickers or tabs and not guilty of count 6, violating 36 C.F.R. § 2.34(a)(1), disorderly conduct.

/ / /

/ / /

**Accordingly,**

This Court refers the matter to the Probation Department for the Eastern District of California for preparation of a Pre-sentence Report.  The matter is placed back on calendar on September 8, 2015, at 11:00 a.m. for receipt of the Pre-sentence Report and sentencing.  The defendant is ordered to contact the Probation Department at (530) 224-7216 on or before June 30, 2015, to calendar an in person or telephonic interview at the direction of the Probation Department.   .

DATED:  June 24, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE